**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, | |
| Plaintiff, | 1:13-CV-00457 |
| v. | |
| THOMAS W. CORBETT, JR., in his capacity as Governor of the Commonwealth of Pennsylvania; ROB McCORD, in his capacity as Treasurer of the Commonwealth of Pennsylvania; MARK R. ZIMMER, in his capacity as Chairman of the Pennsylvania Commission on Crime and Delinquency; and EUGENE DePASQUALE, in his capacity as Auditor General of the Commonwealth of Pennsylvania, | (CHIEF JUDGE KANE)

ELECTRONICALLY FILED |
| Defendants. | |

**REPLY BRIEF OF DEFENDANTS CORBETT AND ZIMMER IN
SUPPORT OF MOTION TO DISMISS/ABSTAIN
OR, IN THE ALTERNATIVE, FOR ABSTENTION/STAY**

This is a civil action for declaratory and injunctive relief seeking a declaration that the Institution of Higher Education Monetary Penalty Endowment Act, Act 1 of 2013 ("the Act" or "Act 1"), enacted by the Pennsylvania General Assembly on February 20, 2013, violates the United States Constitution. Contrary to Plaintiff's characterization, the Act is a proper exercise of the legislative

authority of the government of the Commonwealth of Pennsylvania to regulate the fiscal affairs of institutions of postsecondary education operating within the Commonwealth, including Pennsylvania State University ("PSU"), by requiring those educational institutions under certain circumstances to pay money into an endowment established under the Act within the Commonwealth's State Treasury.

Plaintiff, the National Collegiate Athletic Association ("NCAA"), challenges the Act as an unconstitutional violation of Article I, Sections 8 and 10 (the Commerce and Contracts clauses), of the United States Constitution, as well as a violation of the Takings Clause of the Fifth and Fourteenth Amendments.   The NCAA seeks a declaration that the Act is unconstitutional and asks this Court to issue an injunction prohibiting Defendants from enforcing its provisions.

The Governor and the chair of the Pennsylvania Commission on Crime and Delinquency, along with their co-defendants, the Commonwealth's State Treasurer and Auditor General, have filed motions to dismiss/stay based on abstention principles.  The NCAA urges this Court to reject the application for abstention and to deny a stay.  In so doing, the NCAA minimizes the important state interests that Defendants have proffered.  Instead, the NCAA would have this Court envision the nature and effect of the Act as *the NCAA* unilaterally claims to understand the statute under Pennsylvania law.  In reality, however, the NCAA's framing of the issue it presents to this Court illuminates why this Court should abstain in

deference to proceedings that are currently pending in the Commonwealth Court of Pennsylvania.[1]  This reply brief explains why the NCAA's opposition is flawed.[2]

Central to the application of both *Younger* and *Pullman* abstention is the pendency of a state court proceeding, the outcome of which could influence how the federal court should proceed.  In a case such as this, where the relief sought by the NCAA is equitable in nature – and seeks to render the effect of a state statue

---

[1] In their motion to dismiss, Defendants Corbett and Zimmer rely on *Younger* and *Pullman* abstention.  When applying *Younger* abstention, courts use a three-factor test derived from *Middlesex County Ethics Commission v. Garden State Bar Association*, 457 U.S. 423, 432 (1982).  The *Middlesex* factors are:  (1) state court proceedings must be ongoing and judicial in nature; (2) the state court proceedings must implicate important state interests; and (3) the state court proceedings must afford an adequate opportunity to raise federal claims.  *See Lazaridis v. Wehmer*, 591 F.3d 666, 670 (3d Cir. 2010) (citing *Addiction Specialists Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005)).  *Pullman* abstention "is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem."  *Bellotti v. Baird*, 428 U.S. 132, 147 (1976) (internal quotations and citation omitted).  The Third Circuit Court of Appeals has identified the rationale for *Pullman* abstention as "twofold:  (1) to avoid a premature constitutional adjudication which could ultimately be displaced by a state court adjudication of state law; and (2) to avoid 'needless friction with state policies.'"  *Planned Parenthood v. Farmer*, 220 F.3d 127, 149 (3d Cir. 2000) (quoting *Pullman*, 312 U.S. at 500).  In their opening brief, Defendants Corbett and Zimmer explain why the requirements of both abstention doctrines have been met.

[2] On April 25, 2013, undersigned counsel sought an unopposed extension of time to file this reply brief based upon competing litigation responsibilities that interfered with her ability to file a reply brief until today.  *See* Doc. No. 28.  The Court has yet to act on that unopposed motion.  However, in the absence of action on the motion, Defendants Corbett and Zimmer have filed this reply with the expectation that the Court ultimately will grant the extension.

null and void – both *Younger* and *Pullman* abstention must prevail.  *Middlesex*, 457 U.S. at 431; *Frank Russell Co. v. Wellington Mgmt. Co.*, 154 F.3d 97, 106 (3d Cir. 1998).  More essential to the NCAA's opposition to the application of any abstention doctrine is its tortured use of federal constitutional principles to mask what the Act is all about, and why the Commonwealth Court's review is paramount to this Court's future consideration of this matter.[3]

## ARGUMENT

*The State Court's Interpretation of State Law is Fundamental to this Court's Understanding of Act 1 and the Pennsylvania General Assembly's Power to Regulate PSU, and Necessary to Reach a Proper Resolution of the NCAA's Federal Constitutional Claims.*

The NCAA's attack upon Act 1 at its core blithely disregards and thereby diminishes the General Assembly's plenary legislative power to define **under state law** the legal relationship between the sovereign Commonwealth of Pennsylvania and its institutions of higher education, including especially its largest institution, Pennsylvania State University.  The nature and extent of the Pennsylvania General Assembly's legislative power under the Constitution of Pennsylvania over its institutions of higher education is an issue of Pennsylvania law and policy that

---

[3] The NCAA has tried to suggest that state proceedings are not ongoing due to a number of procedural filings to contest the propriety of the state action itself and the standing of the parties to bring the action.  However, there can be no dispute that the pending Commonwealth Court action was commenced on January 4, 2013, and remains an open matter.  This federal action was filed weeks later – on February 21, 2013.

could not be more foundational. Thus, this Court should be keenly interested in the state courts' understanding of both the Act and the Commonwealth's bedrock public policy interests in matters affecting PSU and other educational institutions within the state.

Act 1 and the NCAA's attack upon that statute bring into question the very nature of PSU under Pennsylvania's system of government. The matter now pending in Commonwealth Court presents these quintessentially state law questions as central issues to be addressed by the Pennsylvania statewide court that was established by the people of the Commonwealth through their Constitution and the Pennsylvania General Assembly to answer precisely these types of state law questions. Under abstention principles, this Court should stay its hand in addressing federal constitutional challenges to the Act until the Commonwealth Court has had an opportunity to determine *under state law* the nature and extent of the legislative power of the Pennsylvania General Assembly to regulate the affairs of PSU.

Refusing to acknowledge the force of Act 1 as an act of the General Assembly to regulate the affairs of PSU and other institutions of higher education, the NCAA instead insists that the Act regulates – and thereby unconstitutionally interferes with – *a transaction* between two *private* entities. The NCAA focuses on the effect that the Act will have on a specific transaction and insists that the

parties to the transaction are purely private parties because its constitutional claims depend upon this myopic perspective.

However, it is not for the NCAA – or even this Court – to decide upon the level of independence that the Pennsylvania General Assembly has accorded (or must accord) PSU under Pennsylvania law.  Rather, it is for *the General Assembly* to determine the degree to which PSU shall operate independently of the Commonwealth, and a matter principally for the courts *of the Commonwealth* to assess the meaning of the General Assembly's enactments to define how much independence the Legislature by statute has chosen to allow the university.

Unlike purely private institutions within Pennsylvania (such as Bucknell University and Dickinson College), PSU was established by – and continues to exist in accordance with – an act of the General Assembly.  *See* 24 P.S. §§ 2531-50.  PSU later became Pennsylvania's exclusive land grant college, again by action of the General Assembly, taken under authority of the Morrill Act of 1862.  *See* 7 U.S.C. § 301 *et seq*.  Pursuant to its legitimate legislative power, Pennsylvania continues to regulate PSU – and to provide substantial financial support – in recognition of PSU's relationship to the Commonwealth.

The General Assembly's enactment of Act 1 is consistent with the legislative power that the General Assembly always has had over the governance and operations of PSU.  The General Assembly's power to regulate PSU's affairs is

part and parcel of the Legislature's plenary power generally to regulate higher education systems operating within the Commonwealth. *See, e.g.*, 24 P.S. § 19-1901 (authorizing the establishment of community colleges); 24 P.S. § 2510-1 (Temple University); 24 P.S. § 2510-201 (University of Pittsburgh); 24 P.S. § 2510-401 (Lincoln University); 24 P.S. § 20-2001-A (State System of Higher Education); *see also* 24 P.S. § 20-2003-C (duties of public institutions of higher education and state-related institutions relating to transfers of credits between institutions of higher education); 24 P.S. §§ 20-2001-D - 20-2006-D (relating to state-related university reporting); 24 P.S. §§ 20-2001-F - 20-2009-F (relating to course materials at institutions of higher education, including state-related institutions); 24 P.S. §§ 20-2001-G - 20-2006-G (relating to college and university sexual violence education).   Indeed, the Commonwealth of Pennsylvania has demonstrated a strong, overarching interest in the conduct of all of its higher education institutions generally - both public and private. *See* 24 P.S. § 6501 *et seq*.

In addition, acting under legislative authority, *see* 24 P.S. §§ 26-2603-B,[4] 2604-B, the State Board of Education has promulgated numerous regulations that

---

[4] The State Board of Education has specific statutory authority (1) to adopt policies under which the Secretary of Education shall approve or disapprove any action of a state-related university in establishing additional branches or campuses, or in discontinuing branches or campuses; and (2) to adopt policies under which the Secretary of Education shall approve or disapprove any action of a state-related

are applicable either generally or specifically to state-related institutions such as PSU.  *See* 22 Pa. Code § 31.14(c) (relating to financial records), § 31.52 (relating to accreditation), and § 31.53 (relating to visitation); Chapter 33 (relating to college and university security); Chapter 34 (relating to branch campuses for state-supported institutions); and Chapter 40 (relating to institutional approval).[5]

As shown by the pervasive statutory and regulatory attention paid by the Commonwealth government to its educational institutions, including PSU, the General Assembly's interest in and power to regulate PSU as an institution runs deep and has a long history.  Viewed in the proper context, therefore, there is nothing extraordinary about the Legislature's latest act of regulation that is Act 1. To claim (as the NCAA) does that PSU is a purely private institution in which the General Assembly has no legitimate regulatory interest is a product of either gross misunderstanding or willful ignorance.

Acknowledging in its submissions to this Court none of the Commonwealth's pervasive regulation of PSU's affairs, the NCAA incongruously and repeatedly describes PSU as a purely private entity.  Its sole support for this label, employed in aid of the NCAA's almost philosophical incantation of private

---

university in establishing new professional schools.  *See* 24 P.S. § 26-2603-B(d)(5), (6).

[5] Several sections of 22 Pa. Code Chapter 40 apply specifically to state-related universities.  *See* 22 Pa. Code §§ 40.21 - 40.26 (relating to eligibility for state-related status).

interest, is an opinion of the Supreme Court of Pennsylvania issued in a case where the sole question presented was whether a school district had the power, ***under Pennsylvania statute***, to impose taxes on PSU-owned real estate.  *See* Doc. No. 27, at 5, 14 n.9, 23, 25 (citing *Pennsylvania State University v. Derry Township School District*, 557 Pa. 91, 731 A.2d 1272 (1999)).

Contrary to the NCAA's portrayal of the case as evidencing PSU's independence from legislative regulation, however, *Derry Township* actually demonstrates that the status of PSU under Pennsylvania law is one that is determined ***by the General Assembly***, at different times and in different contexts. Thus, inasmuch as it is well-established under Pennsylvania law that PSU's relationship to the Commonwealth is one that is dictated solely by the Legislature, it follows that only the Pennsylvania courts can determine authoritatively the meaning and applicability of Act 1, and whether the General Assembly has acted in accordance with the Pennsylvania Constitution and laws to regulate a particular aspect of PSU's fiscal affairs.

In *Derry Township* itself, for example, the Supreme Court explained that whether PSU is to be regarded "as an agency or instrumentality [of the Commonwealth] varies depending on the issue for which the determination is being made." *Derry Township*, 731 A.2d at 1274.  Indeed, the Supreme Court noted that it was ***the General Assembly***, ***through statute***, *see* 24 P.S. § 2533, that

gave PSU's board of trustees the power to acquire and dispose of real property – a key legal component of the court's analysis in that case.  This is not a power or attribute that PSU possesses by virtue of any constitutional principle or, as the NCAA apparently believes, a prerogative inherent to its existence.  Rather, it is ***the General Assembly*** that has the sole authority under Pennsylvania law to determine the powers and privileges of PSU.  Simply put, PSU is in no way immune from the plenary regulatory authority of the Commonwealth acting through its General Assembly.

Because it is predominantly the responsibility of the Commonwealth's own courts to determine the Legislature's intention in enacting a law that regulates PSU's affairs,[6] it follows that any determination made by the Commonwealth

---

[6] In advancing its arguments on the merits that Act 1 violates the Takings and Contracts clauses of the U.S. Constitution, the NCAA relies on the false premise that Act 1's control over PSU's "private property," in this case the funds subject to placement in an endowment fund, is flagrantly unconstitutional.  However, it is properly for Pennsylvania's courts to determine whether any particular PSU property is "private" ***under Pennsylvania law***, as well as to determine ***under state law*** whether and to what extent the General Assembly has accorded to PSU the status of "private" entity.

Though the Supreme Court in *Derry Township* concluded that PSU's Milton Hershey Medical Center was not an agency of the Commonwealth for purposes of real estate taxation, the Supreme Court has never ruled that PSU is beyond the power of the General Assembly to enact laws that regulate or control PSU affairs. Rather, the Pennsylvania courts always have analyzed PSU's status by examining the statutes that the General Assembly has enacted.  *See Derry Township*, 731 A.2d at 1274.  Because all PSU-related cases have involved issues of statutory construction (not pronouncements of constitutional foundation), *Derry Township*

Court (and the Supreme Court of Pennsylvania) about Act 1, and how it relates to the General Assembly's legislative powers over PSU as one of its institutions of higher education, will substantially affect how the NCAA's federal constitutional challenges to Act 1 must be analyzed.  Thus, this Court should abstain.[7]

---

can be understood only in relationship to the statutes relevant to the facts presented in the case.  So understood, *Derry Township* has meaning only in the context of how PSU's status under Pennsylvania law relates to the legislative authority granted to Pennsylvania's political subdivisions to tax real property.  It in no way informs the question of the nature and extent of the General Assembly's legislative power to regulate its institutions of higher education – a power that the General Assembly has exercised in various ways for many decades.  To the extent that the NCAA claims that the General Assembly in this instance has exceeded its plenary legislative power under the Pennsylvania Constitution to regulate an institution of higher education operating under the authority of Pennsylvania a law – and if it has legal standing to challenge the law – it should be the state courts that determine in the first instance whether the General Assembly lacks such regulatory authority.

[7] As explained at length in Defendants' opening brief, *Pullman* abstention "is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary which might avoid in whole or in part the necessity for federal constitutional adjudication, ***or at least materially change the nature of the problem***."  *Bellotti v. Baird*, 428 U.S. 132, 147 (1976) (internal quotations and citation omitted) (emphasis added).  Contrary to the NCAA's assertion in its brief, the Governor and Chairman Zimmer have described very clearly why the state court's interpretation of Act 1 (and its exposition about the legislative power of the Commonwealth's General Assembly over the state's largest institution of higher education) must be given deference as it would greatly inform this Court's interpretation of federal constitutional claims.  The fact that the NCAA argues that the Commonwealth Court might not reach those issues because it believes there are fatal deficiencies in the pleadings (such as standing) does not mean that the Commonwealth Court will agree with the NCAA's view, or that this Court should not give Commonwealth Court the chance to determine whether there are jurisprudential impediments to its ability to reach the substantive merits about Act 1.

## CONCLUSION

For these reasons and those advanced in Defendants' opening brief, this Court should abstain (and dismiss or stay this case) because of a related, pre-existing action pending before the Commonwealth Court of Pennsylvania in *Jake Corman v. National Collegiate Athletic Association, et al*, No. 1 M.D. 2013.

In the alternative, this Court should stay the proceedings in this case pending disposition of another matter pending in this Court – *Commonwealth of Pennsylvania and Thomas W. Corbett, Jr. v. National Collegiate Athletic Association*, Civil Action No. 1:13-CV-00006 (Chief Judge Kane).[8]

Date:  May 6, 2013                                        **Respectfully submitted,**

                                                                    **JAMES D. SCHULTZ**
                                                                    **General Counsel**

**Office of General Counsel**            **By: /s/Linda C. Barrett**
**333 Market Street, 17th Floor**            **LINDA C. BARRETT**
**Harrisburg, PA  17120**                    **Senior Deputy General Counsel**
**Tel:  717-783-6563**                          **Attorney I.D. # 46543**
**Fax: 717-787-1788**                          *For Defendants Thomas W.*
**Email: lbarrett@pa.gov**                    *Corbett, Jr., and Mark R. Zimmer*

---

[8] In the interest of avoiding repetition of arguments, Governor Corbett and Chairman Zimmer also incorporate by reference the arguments made by Defendant State Treasurer McCord in his reply brief filed April 29, 2013.  *See* Doc. No. 29.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **NATIONAL COLLEGIATE**<br>**ATHLETIC ASSOCIATION,**<br>                              **Plaintiff,**<br><br>        **v.**<br><br>**THOMAS W. CORBETT, JR.,** *et al,*<br>                              **Defendants.** | 1:13-CV-00457<br><br>(CHIEF JUDGE KANE)<br><br><br>**ELECTRONICALLY FILED** |

---

### CERTIFICATE OF SERVICE

I, LINDA C. BARRETT, certify that on May 6, 2013, I served this **Reply Brief of Defendants Corbett and Zimmer in Support of Motion to Dismiss/Abstain or, in the Alternative, for Abstention/Stay** by Notice of Docket Activity sent automatically by CM/ECF on the following counsel registered as CM/ECF filing users who have consented to accepting electronic service through CM/ECF:

James Scott Ballenger, Esquire
Everett C. Johnson, Esquire
Latham & Watkins LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
scott.ballenger@lw.com
everett.johnson@lw.com
Telephone: 202-637-2200

*Counsel for Plaintiff*

Thomas W. Scott, Esquire
Killian & Gephart, LLP
218 Pine Street
Harrisburg, PA 17101
tscott@killiangephart.com
Telephone:  717-232-1851

*Counsel for Plaintiff*

Kathryn Boockvar, Chief Counsel
Peggy Morningstar, Assistant Counsel
PA Department of the Auditor General
Office of Chief Counsel
224 Finance Building
Harrisburg, PA 17120-0018
kboockvar@auditorgen.state.pa.us
pmorningstar@auditorgen.state.pa.us
Telephone:  717-787-4546

*Counsel for Defendant Eugene*
*DePasquale*

Matthew H. Haverstick, Esquire
Mark E. Seiberling, Esquire
Joshua J. Voss, Esquire
Conrad O'Brien PC
1500 Market Street
Centre Square
West Tower, Suite 3900
Philadelphia, PA 19102
mhaverstick@conradobrien.com
mseiberling@conradobrien.com
jvoss@conradobrien.com
Telephone:  215-864-8088

*Counsel for Proposed Interveners*

Christopher B. Craig, Chief Counsel
Craig S. Schwartz, Deputy Chief Counsel
Commonwealth of Pennsylvania
Treasury Department
Office of Chief Counsel
1127 Finance Building
Harrisburg, PA 17120
ccraig@patreasury.gov
csschwartz@patreasury.gov
Telephone:  717-787-2740

*Counsel for Defendant Robert McCord*

By: **/s/Linda C. Barrett**
    **LINDA C. BARRETT**
    **Senior Deputy General Counsel**
    **Attorney I.D. # 46543**

    ***Counsel for Defendants***
    ***Thomas W. Corbett, Jr.,***
    ***and Mark R. Zimmer***

**Date:  May 6, 2013**