IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, : Plaintiff : : v. : : THOMAS W. CORBETT, JR., in his capacity as Governor of the Commonwealth of Pennsylvania, et al., : Defendants : | No. 1:13-cv-00457 (Judge Kane) |

## MEMORANDUM

Before the Court is State Senator Jake Corman's motion to intervene as of right as a party-defendant in the above-captioned action pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure or, in the alternative, to intervene by permission pursuant to Rule 24(b)(1)(B). (Doc. No. 13.) The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the Court will deny Senator Corman's motion.

## I. BACKGROUND AND PROCEDURAL HISTORY

This action arises out of a dispute concerning the disposition of a $60 million fine that Pennsylvania State University ("Penn State") is required to pay pursuant to a consent decree it entered into with the National Collegiate Athletic Association ("NCAA"). (Doc. No. 1-4.) The consent decree requires Penn State to pay the fine over five years into an endowment for programs devoted to preventing child sex abuse and assisting the victims of such abuse. (Id. at 6.) About eight months after Penn State entered into the consent decree with the NCAA, Pennsylvania Governor Thomas W. Corbett, Jr., signed into law the Pennsylvania Institution of Higher Education Monetary Penalty Endowment Act, 24 P.S. §§ 7501-05. (Doc. No. 14 at 2.)

1

Under this Act, the $60 million fine imposed on Penn State must be deposited into a trust fund in the Commonwealth Treasury, and the funds may only be used within the Commonwealth for the benefit of Commonwealth residents. (Doc. No. 1 at 11-12 ¶¶ 55-60; Doc. No. 20 at 7, 12.)

### A. The Consent Decree

The background of the Consent Decree that triggers this Court's review of the Endowment Act is all too familiar. On November 4, 2011, after an extensive grand jury investigation into allegations that former Penn State assistant football coach Gerald A. Sandusky sexually abused children for over a decade, Sandusky was criminally charged. (Doc. No. 1 ¶ 29; Doc. No. 23 at 7.) That same day, charges were brought against senior Penn State officials for failing to report the allegations of abuse and for committing perjury before the grand jury; these officials included Penn State Athletic Director Timothy M. Curley and Penn State Senior Vice-President of Finance and Business Gary C. Schultz. (Doc. No. 1 ¶ 32.)

Shortly after the criminal charges were filed against various Penn State officials, the NCAA began evaluating Penn State's potential violations of NCAA rules. (Id. ¶ 37.) On July 23, 2012, Penn State entered into a consent decree with the NCAA. (Id. ¶ 38.) Among other sanctions contained in the consent decree, Penn State agreed to pay a $60 million fine over five years into an endowment for programs devoted to preventing child sexual abuse or to assisting the victims of such abuse. (Id. ¶ 42; Doc. No. 14-1 at 6.) On or about September 18, 2012, the NCAA appointed a task force to oversee the creation of the endowment funded by the $60 million fine. (Id. ¶ 45.) Members of the task force include the Dean of the College of Health and Human Development at Penn State, the Vice Dean for Clinical Affairs at the Penn State College of Medicine, and other individuals from national non-profit organizations, the federal

government, and the NCAA. (Id.) The task force established that "[a]ll funds from the fine will follow the endowment guidelines established by the Child Sexual Abuse Endowment Task Force and flow to programs designed to prevent child sexual abuse or assist the victims of child sexual abuse nationwide." (Id. ¶ 47.) To date, Penn State has paid $12 million into an account scheduled to be transferred into the NCAA's endowment. (Id. ¶ 48; Doc. No. 14-2.)

B. **The Commonwealth Court Action**

On December 28, 2012, Senator Jake Corman, a State Senator from the 34th Senatorial District of Pennsylvania and the Chair of the Senate Committee on Appropriations, circulated a memorandum to other state senators entitled "NCAA Fine Endowment for Pennsylvania." (Doc. No. 1 ¶ 51; Doc. No. 14 at 3-4.) In the memorandum, Senator Corman stated that he planned to introduce legislation to direct funds from penalties placed on Commonwealth-supported institutions of higher education to Commonwealth causes and that "state policy should require the money be distributed for the benefit of the state and its residents." (Doc. No. 1-3 at 2.) Senator Corman further stated in the memorandum that the proposed legislation "seeks to impact the $60 million financial penalties placed upon the Penn State University." (Id.)

Prior to the enactment of the legislation envisioned in his memorandum, Senator Corman commenced an action against the NCAA in the Commonwealth Court of Pennsylvania on January 4, 2013, seeking declaratory and equitable relief to ensure that all of the funds paid into the endowment would be used for the benefit of the Commonwealth and its residents. (Doc. No. 14 at 1-2; Doc. No. 14-1.) In his complaint, Senator Corman alleged that the sanctions imposed in the consent decree violated the Pennsylvania Constitution and Pennsylvania law primarily because the NCAA, despite intending "to wrest such a large sum of Pennsylvania public funds,

3

. . . has refused to submit to any control by Pennsylvania elected officials." (Doc. No. 14-1.) Three days later, Senator Corman moved the Commonwealth Court to issue a preliminary injunction enjoining the NCAA from "disposing of, reducing, or otherwise dissipating outside of Pennsylvania" any of Penn State's first payment of $12 million. (Doc. No. 14-2.)

On February 7, 2013, the NCAA filed preliminary objections to Senator Corman's complaint in the Commonwealth Court. (Doc. Nos. 14-4, 14-5.) In its preliminary objections, the NCAA asserted that Senator Corman lacked standing to bring the action in the Commonwealth Court, that the Commonwealth Court lacked jurisdiction over the action because Penn State was not a party to the action, and that the relief sought by Senator Corman was unconstitutional in that his attempt to override the consent decree would violate the Commerce Clause of the United States Constitution as well as the Contracts Clauses of the Constitutions of the United States and Pennsylvania. (Doc. No. 14-4.)

On September 4, 2013, the Commonwealth Court issued an opinion overruling all of the NCAA's preliminary objections, including its objection challenging Senator Corman's standing. *Corman v. Nat'l Collegiate Athletic Ass'n*, No. 1, 2013 WL 4734606, at *18 (Pa. Cmwlth. Sept. 4, 2013).

### C. The Pennsylvania Institution of Higher Education Monetary Penalty Endowment Act and Further Proceedings in the Commonwealth Court

Following Senator Corman's filing of his complaint and motion for a preliminary injunction in the Commonwealth Court, Governor Corbett, on February 20, 2013, signed into law the Pennsylvania Institution of Higher Education Monetary Penalty Endowment Act, 24 P.S. §§ 7501-05 ("Endowment Act"). (Doc. No. 14 at 2.) The Endowment Act provides:

> If an institution of higher education pays a monetary penalty pursuant

4

> to an agreement entered into with a governing body and:
>
>> (1) the monetary penalty is at least $10,000,000 in installments over a time period in excess of one year; and
>>
>> (2) the agreement provides that the monetary penalty will be used for a specific purpose,
>
> then the monetary penalty shall be deposited into an endowment that complies with the provisions of subsection (b).

24 P.S. § 7503(a). Section 7503(b) requires that the monetary penalty be deposited into a separate trust fund in the State Treasury and, unless otherwise explicitly provided in the agreement, the funds may only be used within the Commonwealth for the benefit of Commonwealth residents. Id. § 7503(b)(1), (4). Furthermore, Section 7503(b)(3) directs the Commission on Crime and Delinquency to "expend the money of the endowment." Id. § 7503(b)(3); see also id. § 7502 (defining "commission"). The Act is applicable "to all monetary penalties paid or payable under agreements between institutions of higher education and governing bodies regardless of the payment date." Id. § 7505.

On the same date on which Governor Corbett signed the Endowment Act into law, Senator Corman filed an amended complaint in the Commonwealth Court, alleging that the consent decree violated the Endowment Act. (Doc. Nos. 14-6, 14-7.) Senator Corman then renewed his motion for a preliminary injunction in the Commonwealth Court on February 26, 2013. (Doc. No. 14-12.) In that motion, he requested the Commonwealth Court to compel the NCAA to comply with the Endowment Act and remit Penn State's first payment of $12 million into the State Treasury. (Doc. No. 14-13.)

The NCAA filed preliminary objections to the amended complaint on March 14, 2013. Thereafter, Senator Corman and Robb McCord, the Treasurer of the Commonwealth, filed a

5

second amended complaint in the Commonwealth Court. (Doc. No. 23 at 9; Doc. No. 23-1.) The second amended complaint alleges that the consent decree violates the Pennsylvania Constitution and the Endowment Act. (Doc. No. 23-1.) On September 4, 2013, the Commonwealth Court overruled all Preliminary Objections.

### D. The NCAA's Complaint Before This Court

On February 20, 2013, the same date on which Governor Corbett signed the Endowment Act into law and on which Senator Corman filed his amended complaint seeking declaratory and equitable relief pursuant to the Endowment Act in the Commonwealth Court, the NCAA instituted the above-captioned action in this Court by filing a complaint against Governor Corbett, Treasurer McCord, Mark R. Zimmer, the Chairman of the Pennsylvania Commission on Crime and Delinquency, and Eugene DePasquale, the Auditor General of Pennsylvania. (Doc. No. 1.) In its complaint for declaratory and injunctive relief, the NCAA alleges that the Endowment Act violates the Commerce and Contract Clauses of the U.S. Constitution as well as the Takings Clause of the Fifth Amendment to the U.S. Constitution. (Id.)

On March 13, 2013, Senator Corman filed a motion to intervene in this action. (Doc. No. 13.) On the following day, Governor Corbett and Chairman Zimmer filed a motion to dismiss (Doc. No. 17), and, on the same date, Treasurer McCord and Auditor General DePasquale each filed separate motions to dismiss (Doc. Nos. 18, 19). On September 4, 2013, Senator Corman and Treasurer McCord filed a motion to take judicial notice of the Commonwealth Court's opinion overruling the NCAA's preliminary objections. (Doc. 33.)

## II. DISCUSSION

Rule 24 of the Federal Rules of Civil Procedure provides for two types of intervention –

intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b). Rule 24(c) imposes procedural requirements that an applicant must satisfy before intervention is permitted. First, the applicant must file a motion stating the grounds for his or her proposed intervention. Fed. R. Civ. P. 24(c). Next, the motion must "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Id. Senator Corman has complied with these procedural requirements. He moves the Court to intervene in this action as of right or, in the alternative, by permission. The Court will now turn to the relevant law.

### A. Intervention as of Right

Rule 24(a) governs an applicant's intervention as of right, providing that a court must allow an individual to intervene in an action where he, on timely motion, "is given an unconditional right to intervene by a federal statute" or "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). The United States Court of Appeals for the Third Circuit has articulated a four-part test to determine whether an applicant may intervene in an action as of right. An applicant is entitled to intervene as of right if four factors are met:

> (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.

Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, 72 F.3d 361, 366 (3d Cir. 1995)

(quoting Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir. 1987)). Upon review of Senator Corman's motion, the Court concludes that Senator Corman does not satisfy the second, third, and fourth factors identified by the Third Circuit.

   1.   **Timeliness**

First, the Court considers the timeliness of Senator Corman's motion. In weighing the timeliness of a motion, the Court must consider: (1) the stage of the proceedings reached when the applicant seeks to intervene; (2) the prejudice that the resulting delay might cause to other parties; and (3) the reason for the delay. Choike v. Slippery Rock Univ., 297 F. App'x 138, 140 (3d Cir. 2008). Generally, an applicant's intervention will not prejudice the current parties where discovery has yet to commence and dispositive motions have yet to be filed. Mountain Top, 72 F.3d at 370. Here, the parties do not dispute that Senator Corman's motion, which was filed three weeks after the NCAA filed its complaint and prior to the filing of any responsive motion, is timely. Accordingly, the Court finds that this factor weighs in favor of intervention.

   2.   **Interest in Litigation**

Next, the Court must consider whether Senator Corman's asserted interest in this litigation supports his motion for intervention. Under Rule 24(a)(2), an applicant seeking to intervene as of right must have an interest "relating to the property or transaction which is the subject of the action" that is "significantly protectable." Donaldson v. United States, 400 U.S. 517, 531 (1971). This legal interest must be direct and "distinguished from interests of a general and indefinite character." Mountain Top, 72 F.3d at 366. "[I]ntervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." Kleissler v. U.S. Forest Serv., 157 F.3d 964, 972 (3d Cir.

8

1998); see also Mountain Top, 72 F.3d at 366 ("The applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene."). An applicant's "mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene." Mountain Top, 72 F.3d at 366.

Upon review of the pleadings and the parties' arguments, the Court finds that under federal law, Senator Corman lacks a significantly protectable interest in this action.[1] The question of Senator Corman's standing is governed by Roe v. Casey. In Roe, the Third Circuit affirmed the District Court's holding that the interests of a legislator who co-sponsored a statute were not sufficiently substantial or direct to warrant intervention as of right when the issue before the court was whether the statute violated federal law and the U.S. Constitution. 464 F.Supp. 483, 485 (E.D. Pa. 1978), aff'd, 623 F.2d 829 (3d Cir. 1980). Senator Corman's position is not distinguishable from that of the legislator in Roe, and therefore by federal standards he does not have a sufficient interest to participate in this action. Further, although Senator Corman identifies several "significantly protectable" interests at stake in this action, including: (1) avoiding inconsistent rulings between this Court and the Commonwealth Court; (2) avoiding unnecessary delay, expense, and waste that may result from litigating duplicative

---

[1] The Court notes that, applying state law, the Commonwealth Court rejected the NCAA's challenge to Senator Corman's standing to bring an action for an alleged violation of the Endowment Act. (Doc. No. 33-1 at 15.) The Commonwealth Court focused on the special provision within the Act affording ten state officials, including Senator Corman as Chair of the Senate Appropriations Committee, authority to review and comment on expenditures of monies from the Endowment Fund. The Commonwealth Court's holding that Senator Corman has standing to bring an action against an alleged violator of the Endowment Act does not inform this Court's analysis. The NCAA's lawsuit waging a constitutional challenge does not implicate Senator Corman's statutory review and comment authority, and thus this feature of the statute does not change the Court's analysis under Rule 24 of the Federal Rules of Civil Procedure.

9

actions in separate forums; (3) the threatened injury to his first-filed action; and (4) the potential preclusive effect this action may have on his action in the Commonwealth Court, these asserted interests are not "significantly protectable" by federal standards. (Doc. No. 14 at 8-10.)

Regarding the first two asserted interests – avoiding inconsistent rulings and avoiding unnecessary delay, expense, and waste – courts in this Circuit have found such interests do not justify intervention as of right. See Worthington v. Bayer Healthcare LLC, No. 11-cv-2793, 2011 WL 6303999, at *6 (D.N.J. Dec. 15, 2011); Glover v. Ferrero USA, Inc., No. 11-cv-1086, 2011 WL 5007805, at *4 (D.N.J. Oct. 20, 2011). Senator Corman seeks to distinguish himself from the applicants in these district court cases by arguing that, although he will seek to dismiss or stay this action if permitted to intervene, he "fully intends to be an active participant in all stages of this litigation going forward as a party defendant." (Doc. No. 26 at 5.) Senator Corman's personal desire to actively participate in this litigation, however, does not justify intervention as of right because it does not demonstrate the existence of a legal interest in this action that is significantly protectable. See, e.g., Mountain Top, 72 F.3d at 366.

Neither does Senator Corman's third asserted interest – "threatened injury to his first-filed action" – warrant intervention of right under federal law. Senator Corman repeatedly asserts that he initiated his action in the Commonwealth Court prior to the NCAA's commencement of this litigation, but he concedes that the issue of the Endowment Act's constitutionality was first presented to this Court. (Doc. No. 14 at 9.) Indeed, the NCAA initiated this litigation on the same date on which the Endowment Act was signed into law. Moreover, although further proceedings before this Court may impact his currently pending lawsuit in the Commonwealth Court, thereby depriving him of the opportunity to advance

10

arguments in support of his position that the NCAA violated the Endowment Act, the Court finds that Senator Corman's actual interest in this action is defending the constitutionality of the Act and ensuring that it is properly interpreted. In other words, Senator Corman seeks to advance arguments that the Endowment Act be upheld as constitutional in this litigation so that he may contend that the NCAA's actions violated the Act in his suit in the Commonwealth Court. Once again, Roe controls, and the Court cannot conclude that Senator Corman's interest in arguing the constitutionality of the Act is sufficiently substantial, direct, or legally protectable to warrant intervention. 464 F.Supp. at 485. In addition, as will be discussed, this interest is shared by the Defendants already named in this action and, thus, is not sufficiently particularized to justify intervention as of right. See Am. Ass'n of People with Disabilities v. Herrera, 257 F.R.D. 236, 251 (D.N.M. 2008) (holding that a state senator lacked a sufficient interest to justify intervention in an action concerning the constitutionality of a statute that he supported because he lacked a specific and particularized interest in defending the statute).

### 3. Whether an Interest Will Be Impaired

Were the Court able to find that Senator Corman possesses a significantly protectable interest in this litigation under the law of this Circuit, the Court cannot find that that interest would be impaired by the Court's disposition of this case unless the Senator is permitted to intervene. For an applicant to demonstrate that his legal interest would be impaired if not permitted to intervene, he must show that his absence in the action poses a "tangible threat" to his interest, such as "a significant stare decisis effect" on his claims. Brody v. Spang, 957 F.2d 1108, 1123 (3d Cir. 1992). Senator Corman claims such a threat on the theory that any rulings issued by this Court may have a stare decisis effect on, or collaterally estop, his action in the

11

Commonwealth Court. (Doc. No. 14 at 10-11.) The Court cannot agree. Courts have held that where the parties to the litigation share the position of the movant, stare decisis or collateral estoppel problems are lessened. See Blake v. Pallan, 554 F.2d 947, 954 (9th Cir. 1977); Nat'l Ass'n for Neighborhood Schls. of Pittsburgh, Inc. v. Bd. of Educ. of the Schl. Dist. of Pittsburgh, 90 F.R.D. 398, 403 (finding that the applicant's asserted legal interest was sufficiently protectable but had been "more than adequately represented by" the defendant already named in the litigation). As the NCAA points out, Senator Corman has not asserted that the named Defendants in this action are not capable of advancing the same arguments that he would raise in this litigation. (Doc. No. 23 at 17.) Accordingly, the Court concludes that Senator Corman's asserted interest would not be impaired by this litigation.

### 4. Adequacy of the Representation

Even if the Court were to find that Senator Corman has a sufficient legal interest that will be impaired by this litigation, he has failed to establish that his interest is not adequately represented by the existing Defendants. Under this element, "[t]he burden, however minimal, . . . is on the applicant for intervention to show that his interests are not adequately represented by the existing parties." Hoots v. Pennsylvania, 672 F.2d 1133, 1135 (3d Cir. 1982). Representation is inadequate on any of the following grounds: "(1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the suit." Brody, 957 F.2d at 1122-23 (citing Hoots, 672 F.2d at 1135).

Senator Corman alleges that the first Brody ground supports his motion for intervention

in this action. Specifically, he contends that, although the "ultimate objective" of the named Defendants – Governor Corbett, Treasurer McCord, Chairman Zimmer, and Auditor General DePasquale – is to defend the constitutionality of the Endowment Act, the Act's constitutionality is "at the forefront" of his action in the Commonwealth Court and should be litigated in that court. (Doc. No. 14 at 11-12.) In his view, as the "prime sponsor of the Endowment Act," he "has a unique and singular interest in having this Court refrain from entertaining this action based on abstention grounds and the rule of comity." (Id. at 12; Doc. No. 26 at 8.)

The Court disagrees. The named Defendants have already filed three motions to dismiss or stay this action on abstention and comity grounds. (Doc. Nos. 17, 18, 19.) Senator Corman, thus, does not have a "unique" or "singular" interest in moving to dismiss or stay this action on those grounds. Moreover, Senator Corman neither contends that the named Defendants will not adequately advance their arguments on these grounds nor that he, if permitted to intervene, would raise different arguments. Accordingly, the Court finds that Senator Corman has failed to show that the named Defendants will not adequately represent his interest in this action.

**B.     Permissive Intervention**

In the alternative, Senator Corman contends that he should be granted permissive intervention. Rule 24(b)(1) governs permissive intervention, providing that a court may permit a timely applicant to intervene if he "is given a conditional right to intervene by a federal statute" or "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). Determining whether a motion for permissive intervention should be granted is within the discretion of the district court. See, e.g., Hoots, 672 F.2d at 1135. "In exercising its discretion, the court must consider whether the intervention will unduly delay or

13

prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24 (b)(3).

As discussed with respect to Senator Corman's motion to intervene as of right, the Court finds that the interests of Senator Corman and the existing Defendants in this action are aligned. The Court has also determined that the named Defendants are capable of adequately representing those interests. Because Senator Corman's participation in this litigation will not add anything of value to the proceedings and would only serve to cause undue delay, permissive intervention is not warranted. See Hoots, 672 F.2d at 1136 ("[W]here . . . the interests of the applicant in every manner match those of an existing party and the party's representation is deemed adequate, the district court is well within its discretion in deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be 'undue.'").

### III. CONCLUSION

As a sponsor of the state statute now before the Court, and as Plaintiff in a separate enforcement action against the NCAA, there is no doubt that Senator Corman follows with interest the progress of the NCAA's challenge to the constitutionality of the Endowment Act. However, one Senator does not satisfy federal standards for intervention of right by demonstrating a legal interest, and the Court finds that permitting discretionary intervention when the Commonwealth is already ably represented would not assist the progress of the case but would instead add to costs and delay. Accordingly, the Court will deny the motion to intervene. An order consistent with this memorandum follows.